# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA


JONATHAN N. FREET,           )

                                         )      Civil Action No. 13 – 86

             Petitioner,       )

                                         )

             v.                  )      Magistrate Judge Lisa Pupo Lenihan

                                         )

ATTORNEY GENERAL OF THE    )

STATE OF PENNSYLVANIA –      )

KATHLEEN G. KANE,          )

                                         )

             Respondent.     )

## MEMORANDUM OPINION

Petitioner Jonathan N. Freet ("Petitioner") has filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (ECF No. 2) seeking relief from his judgment of sentence entered on November 18, 2011, in the Court of Common Pleas of Blair County. For the reasons that follow, the habeas petition will be denied.

## A.    Background

The underlying facts in this matter are taken from the trial court's April 25, 2011 Opinion and Order.

> On or about July 24, 2010, the Altoona Police Department effectuated a traffic stop of Matthew R. Strauss, who allegedly was traveling the wrong way on 7th Avenue in the City of Altoona, Blair County, PA. According to the Criminal Complaint filed against Mr. Strauss, after effectuating the traffic stop, the police officer noted that Mr. Strauss had slurred speech, poor manual dexterity, and that there was a strong odor of marijuana emanating from the vehicle. Mr. Strauss allegedly failed three out of four field sobriety tests. Upon conducting a vehicle Inventory, the police obtained a search warrant. Upon execution of the search warrant upon Mr. Strauss's vehicle, officers found marijuana. The suspected substance was field tested with a positive reaction for the presence of marijuana. Mr. Strauss was allegedly read his Miranda Warnings and agreed to speak with

the police officers.  Mr. Strauss purportedly stated that he was from Pittsburgh and knew a white male named "Johnny" who lived on 6th Avenue.  It is alleged that Mr. Strauss told the officers that he dropped off approximately 10 pounds of marijuana and, in exchange, "Johnny" provided him with $13,180 in U.S. currency.

Further, according to the Affidavit of Probable Cause, Mr. Strauss then took the police officers to the 300 block of 6th Avenue, at which time he pointed out the residence of 308 6th Avenue, identifying that as being the residence in which he delivered the 10 pounds of marijuana in exchange for the U.S. currency.

Based upon the information provided by Mr. Strauss, the police requested and received approval for a search warrant and executed a search of the residence at 308 6th Avenue, Altoona.  Upon execution of the search warrant, the police uncovered drugs, specifically marijuana and drug paraphernalia . . . .

(Trial Court Opinion, 4/25/11 at pp.1-2; ECF No. 5-1 at pp.43-44) (record citations omitted).

As a result of the search, Petitioner,[1] who resides at 308 6th Avenue, was charged with possession of a controlled substance,[2] possession of a controlled substance with intent to deliver,[3] possession of drug paraphernalia,[4] and criminal conspiracy.[5]  On January 14, 2011, Petitioner filed an omnibus pretrial motion seeking to suppress the statements made by Strauss. (ECF No. 5-1 at pp.20-24.)  A hearing was scheduled for March 25, 2011.  At that hearing, the trial court requested the parties brief the issue of standing.  The parties subsequently filed legal memoranda on this issue.  (ECF No. 5-1 at pp.25-33, 34-38, 39-42.)  On April 25, 2011, the trial court filed an Opinion and Order denying the motion to suppress.  (ECF No. 5-1 at pp.43-49.)

---

[1] Charges were also filed against Brittany Hileman who lived with Petitioner.  She ultimately pleaded guilty to certain charges arising from the incident.

[2] 35 P.S. § 780-113(a)(16).

[3] 35 P.S. § 780-113(a)(30).

[4] 35 P.S. § 780-113(a)(32).

[5] 18 Pa. C.S.A. § 903(a)(1).

A bench trial took place and, on November 18, 2011, Petitioner was found guilty of all charges and sentenced to an aggregate term of incarceration of not less than three nor more than seven years. (ECF No. 5-2 at pp.28-32, 33-39.) Petitioner was given bail pending appeal and filed a timely appeal to the Pennsylvania Superior Court raising one issue: that the trial court erred by denying Petitioner a hearing on the merits in regards to his motion to suppress. (ECF No. 5-2 at pp.52-59.) On June 1, 2012, the Pennsylvania Superior Court, via non-published memorandum, affirmed the lower court's denial of Petitioner's suppression motion and judgment of sentence. Id. Petitioner filed a timely petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on March 21, 2013. (ECF No. 5-3 at p.2.) On August 1, 2013, Petitioner filed the instant petition for writ of habeas corpus. (ECF No. 2.)

Since the filing of the habeas petition in this matter, an agreement was reached by and between the Commonwealth and Petitioner whereby the trial court entered an order on August 21, 2015 modifying the sentence for Count 4, criminal conspiracy, and imposed an amended sentence of no less than 6 months and no more than 3 years to remain consecutive to the sentence imposed at Count 1 (PWID). This was to enable Petitioner to become "boot camp" eligible.[6]

**B. Discussion**

Petitioner asserts two grounds for relief in his habeas petition. First, he argues that he was subject to an illegal search in violation of the Fourth Amendment based upon illegally obtained information from Mr. Strauss, and second, he argues a violation of due process based

---

[6] The Court takes judicial notice of the Pennsylvania state court docket sheet in this matter, which is available through Pennsylvania's Unified Judicial Docket System, and specifically of the trial court's amended sentencing Order dated August 21, 2015 and its Order for Clarification dated September 17, 2015. See Commonwealth v. Freet, CP-07-CR-0001645-2010 (Ct. C.P. Blair Cty.)

on the trial court precluding him from arguing the merits of his Motion to Suppress. Petitioner, however, is not entitled to relief on either of his claims.

In Stone v. Powell, 428 U.S. 465 (1976), the United States Supreme Court examined the nature of the exclusionary rule, which it characterized as a "judicially created means of effectuating the rights secured by the Fourth Amendment" and balanced its utility as a deterrent against the risk of excluding trustworthy evidence and thus "deflect[ing] the thruthfinding process." Id. at 482, 490. Finding that, as to collateral review, the costs of the exclusionary rule outweighed the benefits of its application, the Court concluded that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494. Which federal courts are not thus deprived of jurisdiction to hear the claim, they are – for prudential reasons – restricted in their application of the exclusionary rule. Id. at 494, n.37.

Prior to trial, Petitioner and his co-defendant filed Omnibus Pretrial Motions seeking to suppress the evidence discovered as a result of the execution of a search warrant, challenging the traffic stop of Mr. Strauss and claiming that his statements to the police were obtained illegally. The hearing on the motions was held on March 25, 2011, at which time counsel agreed that before addressing the merits of the underlying suppression motion, the trial court would need to issue a preliminary ruling on whether the defendants had standing to challenge the traffic stop and/or statements involving Mr. Strauss and the Altoona Police Department. On April 25, 2011, the trial court issued its ruling finding that the defendants lacked a legitimate expectation of privacy and, therefore, had no standing to challenge the traffic stop and/or statements made by

Mr. Strauss during his custodial detention. When the issue was raised on appeal, the Pennsylvania Superior Court found that the claim was waived.

The Third Circuit has interpreted the phrase "opportunity for full and fair litigation" in Stone as requiring only that no structural defect in the system prevents state courts from hearing a petitioner's Fourth Amendment claim. Marshall v. Hendricks, 307 F.3d 36, 82 (3d Cir.2002). However, Stone does not require a federal court to review the state court's fact finding or its application of Fourth Amendment law. See Willett v. Lockhart, 37 F.3d 1265, 1272-73 (8th Cir. 1994) (federal courts "are not to consider whether full and fair litigation of the claims *in fact* occurred in the state courts, but only whether the state provided an opportunity for such litigation."); Chavez v. Weber, 497 F.3d 796, 801-02 (8th Cir. 2007) (standard of review; if state afforded opportunity for full and fair litigation of Fourth Amendment claim, habeas relief is unavailable even if legal or factual error occurred). Importantly, courts have applied the Stone holding to bar habeas claims in cases where the state court determined that the petitioner lacked standing to assert a Fourth Amendment claim.[7] *See* Travis v. Norris, 306 F. App'x 334 (8th Cir. 2009) (holding that Stone barred federal habeas review of Arkansas state court's decision that the petitioner lacked standing to assert Fourth Amendment challenge to search of a rental car); Terry v. Martin, 120 F.3d 661, 662-64 (7th Cir. 1997) (rejecting habeas petitioner's claim that he did not have full and fair opportunity to litigate his Fourth Amendment claim before Illinois courts where state courts concluded he lacked standing to contest the search of his apartment; any theoretical distinction between standing to raise Fourth Amendment claim and merits of that Fourth Amendment claim is illusory); Hall v. Lockett, 806 F.2d 165, 166 (8th Cir. 1986) (Fourth

---

[7] Although the Third Circuit does not appear to have addressed the issue explicitly, the Seventh and the Eighth Circuits have, and they are in agreement on this principle.

Amendment claim barred by <u>Stone</u> where state court denied motion to suppress because petitioner had consented to search or alternatively had no standing to challenge its constitutionality).  *See also* <u>Pineda v. Evans</u>, 2010 WL 1664080 (E.D. Ark. Apr. 21, 2010); <u>Gonzalez v. Connolly</u>, 2010 WL 1005168, at *5 (S.D.N.Y. March 18, 2010).  Therefore, even though the trial court denied Petitioner's Motion to Suppress based on lack of standing, this does not bring Petitioner's claim out from underneath the <u>Stone</u> bar.  Petitioner has made no showing that he was prevented from litigating his Fourth Amendment claim in the state courts or that his situation is similar to any that has been recognized as qualifying under <u>Stone</u>.  Accordingly, this claim is denied.

Similarly, Petitioner's second claim does not entitle him to relief.  In this claim he argues that he was denied due process because the trial court precluded him from arguing the merits of his motion to suppress.  This claim, however, is simply a derivative claim of his first claim – that the trial court erred in denying his motion to suppress based on lack of standing.  No doubt, there is overlap between the preclusive effect of <u>Stone</u> in the Fourth Amendment context and due process considerations.  The exceptions to <u>Stone</u> – that "the state provides no corrective procedures at all to redress Fourth Amendment violations," or "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process," <u>Gates v. Henderson</u>, 568 F.2d 830, 840 (2d Cir. 1977) – are essentially due process exceptions.  *See* <u>Cappiello v. Hoke</u>, 698 F.Supp. 1042, 1050 (E.D.N.Y. 1988), *aff'd*, 852 F.2d 59 (2d Cir.1988) ("In short, an unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society.").  It is not an "unconscionable

breakdown in the state's process" to require that a defendant show standing before reviewing the merits of his motion to suppress.  Accordingly, this claim is also denied.[8]

### C.  Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Under the controlling standard, a petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893, n.4 (1983)).  Applying that standard here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied.  Accordingly, a certificate of appealability will be denied.  A separate order will issue.

Dated:  April 8, 2016.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc:  Jonathan N. Freet
     LK – 1716
     S.C.I. Benner
     301 Institution Drive
     Bellefonte, PA  16823

     Counsel of record
     *Via CM/ECF Electronic Mail*

---

[8] The Court further notes that both of Petitioner's claims are procedurally defaulted because the first was not presented on appeal and the second was found waived on appeal.